UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GLADYS VANDERDYS,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>**Defendant.** | Civ. No. 2:14-cv-6925 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Gladys Vanderdys brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(g) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her Title XVI application for Social Security Income ("SSI"). For the reasons that follow, the Commissioner's decision is **VACATED AND REMANDED** for reconsideration consistent with the Court's opinion.

I.   LEGAL STANDARDS

A.  The Five–Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work ("PRW"). *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant

1

bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404 .1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91–92 (3d Cir.2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir.2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir.2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (*citing* 42 U.S.C. § 405(g)).

## II. BACKGROUND

Gladys Vanderdys is a forty-five-year-old Newark, New Jersey resident who seeks a finding of disability on the basis of the following impairments: (1) supraventricular tachycardia ("SYT"); (2) portal hypertension; (3) primary biliary cirrhosis ("PBC"); (4) status post fractured fibula/tibia; (5) obesity; and (6) depression. Administrative Transcript ("Tr.") 19. Vanderdys obtained a tenth-grade education in Puerto Rico, is able to communicate in English, and previously worked as a cashier. Tr. 51, 55-57.

In October 2012, Vanderdys filed a Title XVI application for Supplemental Security Income ("SSI"), alleging that her disability arose in January 2007. Tr. 173-78, 189. After both her initial application and her request for reconsideration were denied, Vanderdys requested a hearing before an ALJ. Tr. 42-75, 101-05, 109-11. After conducting a hearing, the ALJ issued a written decision finding that Vanderdys was not disabled. Tr. 16-28. Specifically, the ALJ found that Vanderdys's impairments were severe but did not meet or equal the impairments listed in 20 C.F.R. Part 404, Subpart P, and Appendix 1. Tr. 19-21. Further, the ALJ found that Vanderdys had the residual functional capacity (RFC) to perform sedentary, unskilled work. Tr. 21-27. In September 2014, the Appeals Counsel denied Vanderdys's request to review the ALJ's decision. Tr. 1-7. Vanderdys now appeals.

### A. Summary of the Record

The record includes: (1) treatment notes from treating physicians Dr. Carrol Leevy,

Dr. Zamir Brevli, Dr. Wayne Berberian, Dr. Frank Iacovone, Dr. Juan De La Cruz, and Dr. Flavia De La Cruz; (2) medical records from the Clara Maass Medical Center and Mount Carmel Guild Behavioral Health Center; (3) medical examiner Martin Fencher's hearing testimony; (4) Vanderdys's hearing testimony; and (5) Vanderdys's Function Report.

According to Dr. Leevy's treatment notes, she first diagnosed Vanderdys with PBC in 2007. She prescribed Vanderdys medication to treat fatigue, weight gain, and minimal edema. Tr. 567-79.

From April 2010 through April 2014, Vanderdys's PBC was managed by Dr. Brelvi with medication. Tr. 1024-99. Dr. Brelvi's examination notes show that at multiple follow-up visits, Vanderdys indicated that she felt well, except for some fatigue and swelling, and that her physical and mental status exams were normal. *Id.*

Dr. Berberian's notes indicate that in 2010, Vanderdys fell down the stairs and fractured her distal fibula and ankle joint. Tr. 345-58. She was treated with a splint. *Id*.

In 2012, Dr. Iacovone completed an RFC questionnaire indicating that he had diagnosed and treated Vanderdys for one year for SYT, PBC, and obesity. Tr. 397. He opined that: (1) Vanderdys's symptoms would only occasionally interfere with her attention and concentration; (2) she could stand and walk about four hours in an eight-hour workday, and sit at least six hours; (3) her legs did not need to be elevated with prolonged siting, standing, or walking; (4) she could frequently lift and carry less than ten pounds; and (5) she would be absent about three days a month due to her impairments. Tr. 397-400.

In 2012, Dr. Juan De La Cruz completed an RFC questionnaire, opining that: (1) Vanderdys's symptoms include fatigue, tiredness, palpitations, dizziness, headaches, and cramps which would constantly interfere with her attention and concentration; (2) she could sit and walk/stand for less than two hours in an eight-hour work day; (3) she could not lift anything; (4) she could rarely turn, stoop, or climb stairs; (5) she would be absent at least four days a month; (5) she was incapable of even low stress jobs. Tr. 603-04.

In 2013, Dr. Flavia De La Cruz, Vanderdys's treating primary care physician diagnosed her with cirrhosis, hypersplenism, pancytopenia, general anxiety, and portal hypertension. Tr. 591. She further concluded that: (1) Vanderdys's symptoms would occasionally interfere with her attention and concentration; (2) she would be unable to perform detailed or complicated tasks, meet strict deadlines, complete fast paced tasks, and could not be exposed to work hazards; (3) she could continuously sit and/or stand for more than two hours at one time, and could stand and walk less than two hours in an eight hour workday; (4) she would need five unscheduled breaks through the day; (5) she could not lift anything; and (6) she would be absent four days a month from work. Tr. 592.

In 2013, Vanderdys visited the Clara Maass Medical center emergency room with

abdominal pain, but her symptoms improved with medication and hydration. Tr. 734, 750. A 2014 follow up appointment with Dr. Brelvi indicated that Vanderdys felt well, except for fatigue. Tr. 1097.

Records from Mount Carmel Guild Behavioral Health Center indicate that, in 2013, a nurse practitioner diagnosed Vanderdys with major depressive disorder and prescribed Celexa. Tr. 635-36.

Vanderdys testified as follows. She cannot work because her legs swell, she gets dizzy, and she has knee problems. Tr. 52. She suffers from depression and has experienced three to four anxiety attacks that have required emergency room visits. Tr. 54-55. She stopped taking Celexa for her depression and had been seeing a psychiatrist, but when her Medicaid was cut, she was unable to go back. *Id.* On a typical day, Vanderdys: (1) cooks; (2) folds clothes; (3) makes desserts; (4) decorates her house and performs "manual" jobs to make it look nice; (5) can carry five to ten pounds; (6) can walk one to two blocks, and can stand or sit for two hours; (7) wears compression stocking to help with her leg swelling; and (8) has no problem getting along with other people. Tr. 58-59, 63. She gets headaches as a side effect of her medications, but Tramadol helps. Tr. 61.

Vanderdys also submitted her own Function Report stating that she is able to independently manage her personal care; takes care of her children with assistance from her husband; performs household chores, such as light sweeping and dusting; grocery shops; and manages money. Tr. 34-41.

After reviewing all of Vanderdys's medical records, Dr. Fencher testified as follows. First, he noted that Vanderdys's records did not contain a liver biopsy or a blood test, the two best ways to diagnose PBC. Tr. 64. Vanderdys's PBC "was not even close" to meeting a liver disease Listing and, if she did have PBC, it was progressing "rather slowly." Tr. 68. He noted that Vanderdys had complained of leg swelling, but her medical records indicated that she did not have edema. Tr. 65. He acknowledged that she had a close fracture of her fibular and a commuted fracture of her ankle joint, but that after a splint was placed in her leg in 2010, the medical records didn't indicate any further treatment. Tr. 66. He determined that, while Vanderdys has SYT, it has been controlled since a 2011 ablation. Tr. 66. He concluded that Vanderdys was capable of doing sedentary work and there was no objective medical evidence to substantiate the conclusion that she could only sit or stand for forty-five minutes. Tr. 69.

### B. The ALJ's Decision

At step one, the ALJ determined that Vanderdys has not engaged in substantial gainful activity since the application date. Tr. 19. At step two, the ALJ determined that Vanderdys' SYT, portal hypertension, PBC, status post fractured fibula/tibia, obesity, and depression were severe, but that her headaches were not. Tr. 19. At step three, the ALJ determined that Vanderdys did not have an impairment or combination of impairments that

4

meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Tr. 19.

At step four, the ALJ determined that Vanderdys has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 416.967(a), except she can only perform simple routine unskilled work. Tr. 20. In making this determination, the ALJ concluded that Vanderdys's impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. Tr. 26. The ALJ further concluded Vanderdys was unable to perform any past relevant work, but her RFC restriction was to simple unskilled work. Tr. 27.

At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the Vanderdys can perform. In making this determination, the ALJ did not call a vocational expert, but instead relied upon Social Security Ruling 83-10. Tr. 26-27. The ALJ gave Vanderdys notice at the hearing of the regulations acknowledging the existence of unskilled work in the national economy. *Id*.

### III. DISCUSSION

Vanderdys challenges the ALJ's determination, arguing that the ALJ: (1) improperly weighed the opinion evidence; (2) failed to consider all of the opinion evidence; (3) failed to evaluate her chronic headaches as severe at step two; (4) failed to properly evaluate her fatigue and edema as meeting a listing requirement at step four; and (5) erroneously relied upon the Social Security Rulings at step five. Each of these issues are addressed in turn below.

#### A. Whether the ALJ Improperly Weighed the Opinion Evidence

Vanderdys argues that the ALJ erred in affording "great weight" to the opinion of the medical examiner ("ME"), Dr. Fencher, and giving "no significant weight" to the treating source opinion, Dr. Flavia De La Cruz. The Court disagrees.

An ALJ is free to choose one medical opinion over another so long as the ALJ considers all the evidence and gives some reason for discounting the evidence he rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009). Moreover, an ALJ is allowed to give great weight to a medical expert's opinion if the assessment is well supported by the medical evidence of record. *See Sassone v. Comm'r of Soc. Sec.,* 165 Fed. App'x 954, 961 (3d Cir. 2006) (upholding ALJ's determination that claimant had RFC to perform light work even though it was based largely on assessment of one medical expert). A treating source's opinion of the nature and severity of an individual's impairment must be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Fargnoli v. Massanari*,

5

247 F.3d 34, 43 (3d Cir. 2001); Social Security Ruling (SSR) 96-2p. Otherwise, a treating source's medical opinion must be weighed according to the factors defined in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *See* SSR 96-2p.

Here, the ALJ found that Dr. Fencher's opinion was entitled to great weight because it was consistent with the weight of the evidence, it was supported by objective medical evidence, and it was the opinion of a specialist. Tr. 25. Vanderdys contends that Dr. Fencher's testimony was unsupported by the record because Dr. Fencher incorrectly concluded that the two tests used to identify a PBC diagnosis were missing from the record. Dr. Fencher's assertion was correct: one of the tests was referenced in a treatment note, but the diagnostic results were not part of the record. In any event, any misstatement is immaterial: Dr. Fencher ultimately concluded that Vanderdys "probably has" PBC and acknowledged the potential symptoms when making his RFC determination. *See, e.g.,* Tr. 68. Vanderdys further argues that Dr. Fencher's conclusion that she can perform sedentary work is unsupported by the medical record because she alleged chronic fatigue, dizziness, weakness, and lower extremity edema. But Dr. Fencher accounted for these limitations (excluding edema) in finding her capable of only sedentary work, and his conclusion that Vanderdys did not suffer from edema was well supported by the objective medical evidence, which revealed that Vanderdys did not have any consistent leg swelling that would result in functional limitations. Tr. 69.

The ALJ's decision not to afford Dr. De La Cruz's opinion with controlling weight is also without error. The ALJ found that Dr. De La Cruz's opinion lacked supportability under 20 C.F.R. § 416.927(c)(3).[1] Tr. 25. Specifically, the ALJ pointed out that no objective medical evidence substantiated Dr. De La Cruz's opinion that Vanderdys would need to take 5 unscheduled breaks during an 8 hour day and could not stand more than 20 minutes. Tr. 25. Similarly, no explanation was offered in support of Dr. De La Cruz's opinion that Vanderdys would not be able to handle even a low stress job, other than a conclusory diagnosis of general anxiety disorder. *Id.* Accordingly, the opinion was not entitled to controlling weight. *See Sassone,* 165 Fed. App'x at 961.

Vanderdys further argues that, even if Dr. De La Cruz's opinion did not meet the threshold for controlling weight, her opinion should have be weighed using the other factors provided in 20 C.F.R. § 416.927. But the ALJ's explanation for discounting Dr. De La Cruz's opinion rested on 20 C.F.R. § 416.927(c)(3)-(4), and provided a

---

[1] Pursuant to 20 C.F.R § 416.927(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given to that opinion. The better an explanation a source provides for an opinion, the more weight . . . will be give[n] to the opinion."

6

comprehensive discussion of the opinion's lack of supportability and consistency with the objective medical evidence. Tr. 25.

### B. Whether the ALJ Erred in Failing to Consider all Opinion Evidence

Vanderdys next argues that the ALJ erred when he failed to consider the opinions of Dr. Juan De La Cruz and Dr. Iacovone. Because reconsideration of this evidence would have no effect on the outcome of the case, the claim is denied.

While the ALJ is obligated to consider "all evidence before him," *Burnett v. Comm'r of Social Sec.* 220 F.3d 112, 121 (3d Cir. 2000), the Third Circuit has established "more general limits to an ALJ's duty regarding the consideration of all medical opinions," *Wolfe v. Comm'r of Social Sec.*, 2013 WL 5328343, *10 (D.N.J. Sept. 20, 2013). Specifically, an ALJ is entitled to overlook medical evidence when it is "neither pertinent, relevant nor probative." *See Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 204 (3d Cir. 2008). And remand is not required where an ALJ's failure to consider medical evidence has no effect on the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

Here, the ALJ's failure to weigh the opinions of Drs. Juan De La Cruz and Iacovone was harmless error. First, the majority of the findings in Dr. Iacovone's RFC were ultimately adopted by the ALJ. Dr. Iacovone indicated that Plaintiff could perform a low stress job and that she could sit for at least six hours of an eight-hour workday, *see* Tr. 399, which is the standard for a sedentary job that the ALJ found to be suitable, *see* Tr. 26-28. Second, Dr. Juan De La Cruz's findings mirrored the opinions of Dr. Flavia De La Cruz, which were comprehensively considered by the ALJ. Moreover, Dr. Juan De La Cruz's opinions were based on Plaintiff's subjective complaints, rather than objective medical evidence. Accordingly, the ALJ was entitled to overlook such evidence. *See Johnson*, 529 F.3d at 204.

### C. Whether the ALJ Failed to Evaluate Plaintiff's Headaches at Step Two

Vanderdys argues that the ALJ's step two determination was flawed because it did not include Vanderdys's chronic headaches. The Court disagrees.

Pursuant to 20 C.F.R. § 416.921, an impairment is not severe if it does not "significantly limit your physical or mental ability to do basic work activities."[2] It is the claimant's burden to show that the alleged impairment is more than "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Additionally, the diagnosis of an impairment alone does not establish entitlement to benefits; the claimant must also show how the impairment disables them.

---

[2] 20 C.F.R. § 416.921 defines "basic work activities" as the abilities and aptitudes necessary to do most jobs. Some examples include: sitting, walking, standing, lifting, pushing, seeing, hearing, speaking, understanding, remembering, use of judgment, responding appropriately to supervisors and co-workers.

7

*Pet. of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990). If there is no evidence of any functional limitation imposed by an impairment, then a finding of not severe is appropriate. 20 C.F.R. § 414.921(a). Moreover, if an ALJ finds in favor of a claimant at step two, it is harmless error to erroneously conclude that some of the claimant's other impairments were not severe. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n. 2 (3d Cir. 2007); *see also Padilla v. Comm'r of Soc. Sec.*, No. 14-007, 2015 WL 1006262, at *9 n. 10 (D.N.J. Mar. 6, 2015) ("Even if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five.").

The medical record includes three references to Vanderdys's emergency room visits due to headaches: first in 2007, then in 2013, and then once more in 2014. *See* Tr. 269, 657, 661, 1015. A 2014 CT scan revealed no acute intracranial pathology, and Vanderdys was discharged with pain medications. Tr. 1013-15. At the hearing, Vanderdys testified that she takes Tramadol for her headaches, which occasionally helps. Tr. 61. But no objective medical evidence was offered to substantiate Vanderdys' claim that her headaches would limit her from performing basic work activities. Substantial evidence thus supports the ALJ's exclusion of Vanderdys's headaches at step two. In any case, the ALJ found in Vanderdys's favor at step two by determining that her other impairments were severe. Therefore, any error in concluding that Vanderdys's headaches were not severe is harmless. *See Salles*, 229 Fed. App'x at 145 n. 2.

### D. Whether the ALJ Failed to Properly Evaluate Plaintiff's Fatigue and Edema at Step Four

Vanderdys next argues that the ALJ failed to properly evaluate her chronic fatigue and edema. The record belies Vanderdys's claim.

In determining whether a plaintiff is disabled, an ALJ will consider "all symptoms, including pain and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R § 416.929(a). In discussing the credibility of Vanderdys's claims, the ALJ specifically describes Vanderdys's claims of edema, and considers in detail Dr. Fencher's testimony on this claim, in which Dr. Fencher pointed out that Vanderdys had testified about frequent edema in her legs but there was no objective medical evidence of edema in her charts. Tr. at 24. In finding that Vanderdys was limited to sedentary work, the ALJ stated that he had

8

explicitly "factor[ed] [Vanderdys's] fatigue" into his RFC. Tr. 25. Accordingly, the ALJ properly considered all of Vanderdys's symptoms.

### E. Whether the ALJ Step 5 Finding is Erroneous

Finally, Vanderdys argues that the ALJ erred in failing to call a vocational expert ("VE") because he had found that she had non-exertional limitations. The Court agrees, and will vacate and remand the case to the ALJ on this ground.

Where a claimant suffers from both exertional and non-exertional limitations, an ALJ cannot rely solely on the medical vocational guidelines or "grids." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Instead, the ALJ must also consult "testimony of a vocational expert or other similar evidence, such as a learned treatise." *Id*. at 273. While the Third Circuit has held that an ALJ may use specific social security rules (SSRs) as a substitute for vocational expert testimony, "it must be crystal clear that the SSR is probative as to the way in which the non-exertional limitations impact the ability to work, and thus, the occupational base." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005). In other words, there must be a "'fit' between the facts of a given case and the way in which an SSR dictates that an individual's non-exertional limitations impact upon her occupational base." *Guerrero v. Comm'r of Soc. Sec.,* 249 Fed. App'x 289, 293 (3d Cir. 2007) (citing *Allen,* 417 F.3d at 406). When the ALJ fails to provide the claimant with advance notice of his reliance on an SSR so that she has the opportunity to call her own vocational expert, we give "close scrutiny" to his step five analysis. *See Meyler v. Comm'r of Soc. Sec.*, 238 Fed. App'x 884, 890 (3d Cir. 2007).

Here, the ALJ determined that Vanderdys had moderate difficulties with regard to concentration, persistence, or pace, and that she was limited to simple, unskilled work. The ALJ generally described five SSRs, four of which – SSRs 83-11, 83-12, 83-14, and 83-15 – did not directly apply to Vanderdys. Tr. 28. The ALJ primarily relied upon SSR 83-10, stating that the Rule "provides that, as related to the residual functional capacity, 'the occupational base considered in each Medical Vocational Rule consists of those unskilled occupations identified at the exertional level in question. (The base may be enhanced by the addition of specific skilled or semiskilled occupations that an individual can perform by reason of his or her education or work experience.)'" Tr. 29. Thus, the ALJ summarily concluded "that the medical-vocational rules provided a sufficient basis for determining that jobs exist in significant numbers in the national economy that an individual can perform, even though the individual is limited to performing the type of 'simple duties' that constitute unskilled work." *Id*.

The ALJ's perfunctory step five analysis is not supported by substantial evidence. In *Meyler*, the Third Circuit addressed an analogous situation where the "ALJ relied upon SSR 85–15 and SSR 83–10 without calling a vocational expert, and without providing advanced notice to [plaintiff] so she could call her own vocational expert." *Meyler,* 238 F. App'x at 890. The Third Circuit "vacate [d] and remand[ed] for further explanation by

9

the ALJ [concerning] how Meyler's specific limitations affect[ed] her ability to perform unskilled work in a job that constitutes substantial gainful employment." *Id.* at 890–91. The Court noted that the ALJ neither explained the manner in which plaintiff's "particular mental impairments relate[d] to the categories or examples in SSR 85–15[,]" nor why, in accordance with the cited SSRs, plaintiff's non-exertional impairments "did not prevent [plaintiff] from meeting the mental demands of unskilled work." *Id.* at 280.

Similar to *Meyler,* the ALJ here relied on SSRs without providing an explicit explanation concerning the manner in which Vanderdys's specific "mental impairments relate to the categories or examples in" the cited SSRs. *Id.* The step five section of the ALJ's decision includes only conclusions; there is no analysis or reasoning aside from references to various SSRs, and that analysis does not meet the requirements of *Sykes*. Thus, the Court finds that the ALJ's conclusion that Vanderdys's non-exertional limitations, principally her depression and moderate difficulties with concentration, persistence, and pace, did not significantly erode her occupational base is not supported by substantial evidence. *See Martinez v. Comm'r of Soc. Sec.*, No. 13-4819, 2014 WL 7896423, at *10 (D.N.J. Aug. 27, 2014) (vacating and remanding a Social Security appeal to the ALJ, who did not explain how Plaintiff's mental impairments related to the categories or examples in the SSRs); *Buffington v. Comm'r of Soc. Sec. Admin.*, No. 12-100, 2013 WL 796311, at *10-11 (D.N.J. Mar. 4, 2013) (same); *Fisher v. Astrue,* No. 11–1634, 2012 WL 983691, at *7 (D.N.J. Mar. 21, 2012) (same).

Accordingly, the Court vacates and remands the matter to allow the ALJ to develop the evidentiary record if necessary and thereafter reconsider how Vanderdys's specific limitations affect her ability to perform unskilled work in a job that exists in substantial numbers in the national economy.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED AND REMANDED** for reconsideration consistent with the Court's opinion. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 14, 2016**